UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW E. ROTH,<br><br>         Plaintiff,<br><br>    -v-<br><br>CK AMARILLO LP, CK AMARILLO GP, LLC, CERTARES OPPORTUNITIES LLC, CERTARES MANAGEMENT LLC, AND KNIGHTHEAD CAPITAL MANAGEMENT, LLC,<br><br>         Defendants,<br><br>and<br><br>HERTZ GLOBAL HOLDINGS, INC.,<br><br>         Nominal Defendant. | Civil Action No. 24-706<br><br>**(*Jury Trial Demanded*)** |

## COMPLAINT

Plaintiff Andrew E. Roth ("**Roth**") by his attorneys, Ostrager Chong Flaherty & Broitman P.C., complaining of defendants CK Amarillo LP ("**Amarillo LP**"), CK Amarillo GP, LLC ("**Amarillo GP**"), Certares Opportunities LLC ("**Certares Opportunities**"), Certares Management LLC ("**Certares Management**"), and Knighthead Capital Management, LLC ("**Knighthead**") hereafter, collectively "**Defendants**", and nominal defendant Hertz Global Holdings, Inc. ("**Hertz**" or the "**Company**") alleges upon information and belief as to all paragraphs except paragraph 2, as follows:

## INTRODUCTION

1.      This action arises because Defendants, during periods in which they were controlling stockholders of Hertz, garnered short-swing profits in violation of Section 16(b) of the Securities Exchange Act of 1934 (the "**Exchange Act**"), 15 U.S.C. § 78p(b).  Defendants sold shares of the Company's common stock.  Shortly thereafter, Hertz's board, dominated by directors appointed by Defendants, authorized a stock repurchase program of $2 billion and Hertz rapidly repurchased large amounts of its stock.  As a result of the foregoing transactions, based on matching Defendants' sale of stock with their indirect pecuniary interest in the Company's stock repurchases, Defendants realized short-swing profits of at least $126.9 million that are subject to disgorgement to the Company.

## THE PARTIES

2.      Plaintiff Roth is a New York resident who is the owner of common stock, $0.01 par value ("**Common Stock**") of Hertz.

3.      Hertz, a nominal defendant herein, is a Delaware corporation with its principal place of business at 8501 Williams Road, Estero, Florida 33928.

4.      Amarillo LP is a Delaware limited partnership with a business address at c/o Knighthead Capital Management, LLC, 280 Park Avenue, 22nd Floor, New York, NY 10017.

5.      Amarillo GP is a Delaware limited liability company with offices at c/o Knighthead Capital Management, LLC, 280 Park Avenue, 22nd Floor, New York, NY 10017.  Amarillo GP serves as the general partner of Amarillo LP.  (*See*, Defendants' Schedule 13D dated July 12, 2021, p. 6/11).

6.      Certares Opportunities is a Delaware limited liability company with offices at 350 Madison Avenue, 8th Floor, New York, NY 10017.  Certares Opportunities serves as an

investment manager of Amarillo LP. (*See*, *Id*).

7.  Certares Management is a Delaware limited liability company with offices at 350 Madison Avenue, 8th Floor, New York, NY 10017.  Certares Management is the sole member of Certares Opportunities.  (*See*, Defendants' Schedule 13D dated July 12, 2021, p. 10/11).

8.  Knighthead is a Delaware limited liability company with offices at 280 Park Avenue, 22nd Floor, New York, NY 10017.  Knighthead serves as an investment manager of Amarillo LP.  (*See*, Defendants' Schedule 13D dated July 12, 2021, p. 6/11).

## JURISDICTION AND VENUE

9.  This action is brought by Roth on behalf of Hertz pursuant to Section 16(b) of the Exchange Act, 15 U.S.C. § 78p(b) ("**§16(b)**" or "**Section 16(b)**") to obtain disgorgement of profits that Defendants realized in "short-swing" transactions in Hertz Common Stock in violation of this statute.  Jurisdiction of this court and venue in this District are proper pursuant to 15 U.S.C. § 78a(a) in that certain of the acts underlying this action occurred in this District.

## THE GOVERNING LAW

10.  Section 16(a) of the Exchange Act defines a "statutory insider" as [e]very person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security . . . which is registered pursuant to section 12, or who is a director or an officer of the issuer of such security." 15 U.S.C. §78p(a)(1).

11.  Section 16(b) of the Exchange Act provides that if any statutory insider of an issuer purchases and sells, or sells and purchases, any equity security of such issuer within a period of less than six months ("**short-swing transactions**"), any profits arising from those transactions are recoverable by the issuer or by a stockholder suing on its behalf.  The express

purpose of Section 16(b) is "preventing the unfair use of information which may been obtained by such" statutory insiders.  15 U.S.C. 78p(b).

12. The statute confers on securities issuers a legal right, grounded in common law, that makes such statutory insiders "constructive trustees" of the issuer with a fiduciary duty not to engage in short-swing transactions of the issuer's stock.

13. The Exchange Act does not define the term "beneficial owner".  Section 3(b) of the Exchange Act, 15 U.S.C. 78c(b), expressly authorized the Securities Exchange Commission ("**SEC**") to adopt rules defining terms in the Exchange Act.  In 1991, the SEC adopted two definitions of "beneficial owner".

14. The first definition of "beneficial owner", in SEC Rule 16a-1(a)(1), 17 C.F.R. 240.16a-1(a)(1), applies "[s]olely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities…" and defines "beneficial owner" as "any person who is deemed to a beneficial owner pursuant to Section 13(d) of the Act [15 U.S.C. 78m(d)] and the rules thereunder", which turns on the person's potential for control.  Once that status is determined, or if a person has insider status as an officer or director, the second definition comes into play.

15. The second definition of "beneficial owner", in SEC Rule 16a-1(a)(2), 17 C.F.R. 240.16a-1(a)(2), defines the term "beneficial owner" for purposes of reporting ownership transactions under Section 16(a) of the Exchange Act and for purposes of determining disgorgeable short-swing profits under Section 16(b) of the Exchange Act.  For these purposes, a "beneficial owner" is "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities" of the issuer.  The term "pecuniary interest" is defined as "the opportunity,

directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities." 17 CFR 240.16a-1(a)(2)(i).

## FACTS COMMON TO ALL CLAIMS

I. **Defendants Became Statutory Insiders and Controlling Stockholders of Hertz Common Stock in Hertz's Plan of Reorganization**

16. On May 22, 2020, the Company and several of its subsidiaries filed petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in U.S. Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**").[1] To exit Chapter 11, the Company needed investors to fund its Plan of Reorganization (the "**Plan**").

17. Defendants Knighthead and Certares Opportunities submitted a proposal to sponsor the Plan and commit to invest up to $4.2 billion to purchase up to 100% of the Common Stock of the reorganized Hertz. (*See*, Hertz Press Release dated March 2, 2021). Shortly thereafter, Knighthead and Certares Opportunities created Amarillo LP to consolidate their holdings of the Company's Common Stock. Amarillo LP's primary investment objective is to invest in the shares of Hertz. (*See*, Knighthead Part 2A of Form ADV: Firm Brochure dated March 29, 2023, pp. 6-7). Knighthead and Certares Opportunities also entered into an Investment Management Agreement effective April 15, 2021, whereby Knighthead and Certares Opportunities would serve as the investment managers of Amarillo LP. (*See*, Defendants' Form 3 dated July 12, 2021, p. 3/4 and Form 4 dated November 16, 2021 at page 3/3).

18. A competing proposal to sponsor the Plan was submitted by Centerbridge Partners, L.P., Warburg Pincus LLC, and Dundon Capital Partners (*See*, Hertz Press Release dated April 3, 2021). In view of the competing proposals, on April 28, 2021, the Bankruptcy

---

[1] *In re The Hertz Corporation, et al.*, Case No. 20-11218 (MFW)

Court issued an order establishing bidding and auction procedures to choose between the competing proposals.  On May 2, 2021, a revised proposal was submitted by Knighthead, Certares Opportunities, and Apollo Capital Management, LP ("**Apollo**").  The revised proposal involved funding the Plan through direct Common Stock investments aggregating $2.9 billion, direct preferred stock investments aggregating $1.5 billion, and a rights offering to raise $1.36 billion. (*See*, Hertz Press Release dated May 4, 2021 and Form 8-K/A dated May 14, 2021, p. 3).

19. On May 11, 2021, in accordance with the Bankruptcy Court's bidding and auction procedures, Hertz's debtors found Knighthead and Certares Opportunities' proposal to be superior.  The Bankruptcy Court approved Hertz's selection of Knighthead and Certares Opportunities' proposal on May 14, 2021, and formally confirmed the Plan on June 10, 2021. (*See*: Hertz Press Release dated May 12, 2021; Form 8-K/A dated May 14, 2021, p. 3; and Form 10-Q for the quarter ended June 30, 2021, p. 14).

    A.    **Defendants' Status as Statutory Insiders**

20. Pursuant to the Plan, on June 30, 2021, Defendants received 196,673,104 shares of the Company's newly issued shares of Common Stock representing 41.75% of its outstanding Common Stock.  (*See*: Hertz Schedule 14A filed April 8, 2022, p.1; Defendants' Schedule 13D dated July 12, 2021 at 2/11 and Item 4; and Form 3 dated July 12, 2021).  Each share of Common Stock represented one vote.  (*See*, Hertz Form 10-Q for the quarter ended June 30, 2021, p. 31).

21. The Common Stock acquired by Defendants was directly held by Amarillo LP, an entity organized by Certares Opportunities and Knighthead to consolidate their stock ownership of Hertz. (*See*, Defendants' Form 3 dated July 12, 2021, p. 3/4; Knighthead Part 2A of Form ADV:  Firm Brochure dated March 29, 2023, pp. 6-7).  At all relevant times, Amarillo LP was a

direct owner of Hertz Common Stock, had a hundred percent pecuniary interest in its holdings of Hertz Common Stock, and was therefore a greater than 10% beneficial owner of Hertz Common Stock and a statutory insider for purposes of §§ 16(a) and (b) of the Exchange Act.

22. Investment decisions with respect to the Common Stock held by Amarillo LP were made by an investment committee of investment managers which included officers and directors of Certares Opportunities and Knighthead, two of which were also appointed to the Hertz board of directors as hereinafter described. (*See*: Defendants' Form 3 dated July 12, 2021 at page 3/4 and Form 4 dated November 16, 2021 at page 3/3; and Hertz Schedule 14A filed April 8, 2022 at p. 50). At all relevant times, Certares Opportunities and Knighthead were greater than 10% beneficial owners because each shared voting and/or investment power in Amarillo LP's holdings of Hertz Common Stock, and therefore statutory insiders for purposes of §§ 16(a) and (b) of the Exchange Act. Defendants' SEC filings confirm that "[e]ach of CK Amarillo [LP], CK [Amarillo] GP, Knighthead and Certares [Opportunities], by virtue of their relationships, may be deemed to share the power to vote or direct the vote and to share the power to dispose of or direct the disposition of the shares held by CK Amarillo [LP]." (*See*, Hertz Schedule 14A filed April 8, 2022 at p. 50. *See also*, Defendants' Schedule 13 D/A (Amendment No. 1) dated November 16, 2021). Certares Management, as sole member of Certares Opportunities, had indirect beneficial ownership of the same shares, and therefore is also a greater than 10% beneficial owner and statutory insider.

**B.     Defendants' Status as Controlling Stockholders**

23. Defendants maintained voting control of the Company's Common Stock, and were therefore controlling stockholders, when they engaged in the short-swing transactions hereinafter set forth. The Company's and the Defendants' SEC filings report that Defendants

had beneficial ownership of between about 39% and 50% of the Company's outstanding Common Stock from November 2021 to July 2022:

| Date | No. of Shares of Common Stock Beneficially Owned | Percent of the Company's Outstanding Common Stock |
|---|---|---|
| 11/16/2021 | 181,455,469[2] | 39.18% |
| 02/17/2022 | 181,455,469 | 42.27%[3] |
| 03/25/2022 | 181,455,469 | 43.50%[4] |
| 04/21/2022 | 181,455,469 | 44.031%[5] |
| 07/28/2022 | 181,455,469 | 50.359%[6] |

24. Hertz acknowledged that Defendants were controlling stockholders. The Annual Report on Form 10-K for the fiscal year ended December 31, 2022, at page 36 includes the following risk factor regarding Defendants Knighthead and Certares Opportunities as the Plan Sponsors:

> The significant ownership interests held by our Plan Sponsors, which we believe as of December 31, 2022, exceeded 50% of our outstanding common stock, means that the Plan Sponsors have the ability to control matters requiring stockholder approval, such as director elections, amendments to the Hertz Holdings Certificate of Incorporation and significant corporate transactions. With respect to such matters, the Plan Sponsors' interests may not align with those of other stockholders or they may take actions that other stockholders do not view as beneficial. This could delay or prevent a change of control transaction or discourage a potential acquirer from pursuing such a transaction, which transaction might have otherwise been of benefit to the other stockholders. The Plan Sponsors' ownership may also adversely affect the trading price for our common stock if potential investors perceive disadvantages in investing in a company with controlling stockholders.

---

[2] Defendants' Schedule 13D/A (Amendment No. 1) dated November 16, 2021.
[3] The Company's 2021 annual report on Form 10-K filed with the Securities and Exchange Commission ("SEC") on February 23, 2022 (based on 429,294,302 shares outstanding as of February 17, 2022).
[4] The Company's Schedule 14A (Proxy Statement) filed with the SEC on April 8, 2022 ("**2022 Proxy Statement**").
[5] The Company's Form 10-Q for the quarter ended March 31, 2022 (based on 412,111,348 shares outstanding as of April 21, 2022).
[6] Defendants Schedule 13D/A (Amendment No. 2) dated August 1, 2022.

25. Defendants also appointed directors to Hertz's board of directors. Pursuant to the Plan, which embodied the proposal sponsored by Knighthead and Certares Opportunities, Knighthead appointed Thomas Wagner ("**Wagner**") and Andrew Shannahan ("**Shanahan**"), and Certares Opportunities appointed Gregory O'Hara ("**O'Hara**") and Colin Farmer ("**Farmer**") to Hertz's board, hereafter collectively "**Defendants' Appointees**". (*See*, Hertz Schedule 14A filed April 8, 2022, p. 1).[7] Defendants' Appointees were directors of the Company and members of its governance committee at all relevant times. O'Hara served as Chairperson of the Hertz board of directors and Farmer and Wagner were also members of the Company's compensation committee at all relevant times. (*See*: Hertz Form 8-K dated July 7, 2021, pp. 11-13 and Schedule 14A filed April 8, 2022, p. 8). When Hertz formally emerged from bankruptcy on June 30, 2021, the Company's board consisted of eight directors, four of whom were appointed by Defendants. (*See*, Hertz Form 8-K filed 07/07/21, pp. 2, 11).

26. While serving as Company directors, Defendants' Appointees also served as officers or executives of Defendants. Farmer has been Senior Managing Director and Head of the Management Committee of Certares Management since 2014 and a member of Certares Management's investment committee. Shanahan has been the Head of Research and a Partner at Knighthead since 2008 and is a member of its Investment Committee. O'Hara is the Founder and Senior Managing Director of Certares Management and at all relevant times was the Head of its Investment Committee and a member of its Management Committee.[8] Wagner is the co-

---

[7] "The selection of directors and officers of Reorganized Hertz Parent and Reorganized Hertz Corp. shall be disclosed in the Plan Supplement, and at least a majority of the directors shall be appointed by the Plan Sponsors (other than Apollo)". Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of the Hertz Corporation and Its Debtor Affiliates, p. 58, *In re The Hertz Corporation, et al*, Docket No. 5261-1 at page 63 of 103.

[8] O'Hara retired from the Board in January 2023 and Jeffrey Nedelman, Senior Managing Director of Certares Management was appointed to fill the vacancy. Hertz Schedule 14A filed

9

founder and managing member of Knighthead.  (*See*, Hertz Schedule 14A filed April 8, 2022, pp. 2-5).

## II.     Defendants' Purchase and Sale Transactions

27.     Defendants garnered short-swing profits in violation of Section 16(b) disgorgeable to the Company in the transactions hereinafter set forth.

### A.     Defendants' Sale of Common Stock

28.     On November 8, 2021, the Company, Amarillo LP and eleven other stockholders (the "**Selling Stockholders**") and several underwriters entered into an Underwriting Agreement pursuant to which the Selling Stockholders sold shares of Common Stock to the Underwriters at $27.695 per share, with such shares to be resold by the Underwriters to the public at a price of $29 per share.  (*See*, Defendants' Schedule 13D/A (Amendment 1) dated November 16, 2021 at Item 4).

29.     Defendants subsequently filed a Form 4 with the SEC reporting their sale on November 12, 2021 of 15,217,635 shares of Common Stock at a price of $27.695.  (*See*, Defendants' Form 4 dated November 16, 2021).

### B.     Defendants' Purchase Transactions

30.     On November 29, 2021, Hertz announced that its board of directors, including the four Defendants' Appointees, had authorized the repurchase of up to $2 billion of the Company's outstanding Common Stock (the "**2021 Buyback**").  (*See*, Hertz Press Release dated November 29, 2021 and Form 8-K dated November 29, 2021).  Nothing in Hertz's announcement indicated that any directors recused themselves or that the repurchase was approved by an independent

---

April 5, 2023, p. 4.  On January 19, 2024, Nedelman resigned and the Board appointed O'Hara to fill the vacancy. Hertz Form 8-K dated January 19, 2024, Item 5.02.

committee of the Board.  *Id.*  The 2021 Buyback was completed by the second quarter of 2022. (*See*, Hertz, Form 10-Q for the quarter ended June 30, 2022, p. 23).

31. In Quarterly Reports on Form 10-Q, the Company reported the following Common Stock repurchases:

| Repurchase Date | # of Shares Repurchased | Average Repurchase Price Per Share | Source Document |
|---|---|---|---|
| January 2022 | 12,238,858 | $21.65 | Form 10-Q for the quarter ended March 31, 2022, p. 56 |
| February 2022 | 12,271,099 | $19.59 | |
| March 2022 | 10,455,008 | $20.71 | |
| April 2022 | 4,527,052 | $22.26 | Form 10-Q for the quarter ended June 30, 2022, p. 62 |
| May 2022 | 21,877,455 | $19.14 | |

32. Defendants are controlling stockholders of the Company and have the opportunity, directly or indirectly, to profit or share in any profit derived from the Company's repurchases identified herein. 17 CFR 240.16a-1(a)(2)(i).  Defendants had, at minimum, an approximately 39% indirect pecuniary interest in the Company's repurchases, measured by their percentage ownership of the Common Stock as of November 16, 2021. (See, ¶ 23, *supra)*.

33. By engaging in the short-swing transactions identified herein, Defendants, as statutory insiders, breached the trust and fiduciary duty that they owed to the Company to refrain from engaging in short-swing trading in the Company's Common Stock.

34. Matching Defendants' sales with the Company's repurchases, Defendants realized short-swing profits of at least $126,974,412 that are disgorgeable to the Company.  A computation of the disgorgeable short-swing profits is shown in annexed **Exhibit A**.

35. At the time that Amarillo LP sold 15,217,635 shares of Common Stock, each of Amarillo LP, Amarillo GP, Certares Opportunities and Knighthead beneficially owned

196,673,104 shares of the Company's Common Stock. At all times when the Company repurchased its shares, each of Amarillo LP, Amarillo GP, Certares Opportunities, and Knighthead beneficially owned 181,455,469 shares of the Company's Common Stock.  Certares Management, as sole member of Certares Opportunities, had indirect beneficial ownership of the same shares.  These shares represented over 39% of the Company's outstanding Common Stock at the start of the 2021 Buyback and over 50% by July 21, 2022, providing Defendants with voting control of the Company.  (*See*, ¶ 23, *supra*).  Defendants were controlling stockholders of the Company when they engaged in short-swing transactions in the Company's Common Stock, resulting in short-swing profits that Defendants must disgorge to the Company.

36. By virtue of their voting power and control, Defendants are presumed to have an indirect pecuniary interest in the shares repurchased by the Company and are liable to the extent of their respective pecuniary interests in the short-swing profits arising from such repurchases and short-swing sales made by Defendants unless they can show they could not cause or prevent the Company's repurchases.  *See,* Brief of the SEC as Amicus Curiae, pp. 26-27, *Feder ex rel. Ivax Corp. v. Frost* 220 F.3d 29 (2d Cir. 2000), 2000 WL 34003848.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## AGAINST THE DEFENDANTS

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36, *supra*, as if fully set forth herein.

38. At all relevant times, each of the Defendants was a greater than 10% beneficial owner of Hertz Common Stock and had a direct or indirect pecuniary interest in the profits derived from the short-swing transactions effected by the Defendants.  Each one of the Defendants is liable to the extent of its pecuniary interest in the profits derived from the short-swing transactions.

12

39. The matching of sales by Defendants in November 2021 with Defendants' indirect pecuniary interest in repurchases by the Company during the period February 2022 to May 2022 disclosed in the Company's Forms 10-Q filed with the SEC and covering such period, yields short-swing profits of at least $126,974,412.

40. Accordingly, Defendants are each liable to disgorge short-swing profits to the extent of their respective pecuniary interests in Amarillo LP's short-swing profits.

**IN THE ALTERNATIVE,
AS AND FOR A SECOND CLAIM
FOR RELIEF AGAINST AMARILLO LP**

41. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 40, *supra*, as if fully set forth herein.

42. At all relevant times, Amarillo LP was a greater than 10% beneficial owner of the Company's Common Stock.

43. At all relevant times, Amarillo LP had a 100 percent direct pecuniary interest in the profits derived from Defendants' short-swing transactions.

44. The matching of sales by Amarillo LP in November 2021 with Amarillo LP's indirect pecuniary interest in the Company's repurchases during the period February 2022 to May 2022 disclosed in the Company's Forms 10-Q filed with the SEC and covering such period, yields short-swing profits of at least $126,974,412.

45. Accordingly, Amarillo LP is liable to disgorge the entirety of the short-swing profits to the Company.

**ALLEGATIONS AS TO DEMAND**

46. On May 2, 2023, plaintiff made demand upon Hertz to commence this lawsuit and the Company has not pursued the claim within the statutory period.

WHEREFORE, Plaintiff demands judgment on behalf of Hertz against defendants, as described above, plus attorneys' fees, interest, and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 31, 2024

                                        Yours, etc.

                                        OSTRAGER CHONG FLAHERTY
                                          &BROITMAN P.C.

By: */s/ Glenn F. Ostrager*
     Glenn F. Ostrager
     Joshua S. Broitman
     Roberto L. Gomez

437 Madison Avenue Fl. 24
New York, New York 10022-7035
(212) 681-0600

*Attorneys for Plaintiff Andrew E. Roth*