UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW E. ROTH,

                Plaintiff,

-against-

CK AMARILLO LP, CK AMARILLO GP, LLC, CERTARES OPPORTUNITIES LLC, CERTARES MANAGEMENT LLC, KNIGHTHEAD CAPITAL MANAGEMENT, LLC, HERTZ GLOBAL HOLDINGS, INC.

                Defendants.

24-CV-0706-LTS

---

### MEMORANDUM ORDER

Andrew E. Roth ("Roth" or "Plaintiff") brings this derivative action on behalf of Hertz Global Holdings, Inc. against CK Amarillo LP, CK Amarillo GP, Certares Opportunities, LLC, Certares Management LLC, Knighthead Capital Management, LLC, (collectively, "Defendants") and nominal defendant, Hertz Global Holdings, Inc. ("Hertz," or "the Company") asserting a cause of action arising under Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. section 78p(b), which prohibits corporate insiders from engaging in short-swing transactions in the securities of the company. (Docket entry no. 1 (the "Complaint").) Roth seeks the disgorgement of any and all profits earned from the Defendants' alleged short-swing transactions in Hertz stock between November 8, 2021, and May 2022. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. section 1331.

Pending before the Court is the Defendants' motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures. (Docket entry no. 18 (the "MTD").) The Court has reviewed the parties'

submissions carefully and, for the following reasons, grants Defendants' motion to dismiss in its entirety.

## BACKGROUND

Unless otherwise indicated, the following allegations are taken from the Complaint, all well-pleaded factual content of which is presumed true for purposes of this motion practice.

Plaintiff Roth is a New York resident who is the owner of common stock of Hertz Global Holdings, a Delaware corporation. (Complaint ¶¶ 2-3.) Defendants comprise various partnerships and LLCs associated with Hertz, including CK Amarillo LP ("Amarillo LP") (a Delaware limited partnership), CK Amarillo GP (the general partner of Amarillo LP), Certares Opportunities (an investment manager of Amarillo LP), Certares Management (the sole member of Certares Opportunities), and Knighthead Capital Management, LLC ("Knighthead"), an investment manager for Amarillo LP. (Id. ¶¶ 4-8.)

On May 22, 2020, the Company filed a petition for relief under Chapter 11 of the Bankruptcy Code in Delaware Bankruptcy Court. (Id. ¶ 16.) As part of the bankruptcy proceedings, the Company needed investors to fund its "Plan of Reorganization." (Id.) On June 10, 2021, the bankruptcy court ultimately confirmed a reorganization plan submitted by Knighthead and Certares Opportunities which involved a capital investment of $2.9 billion, comprising $1.5 billion of direct preferred stock and a rights offering to raise $1.36 billion. (Id. ¶ 18.) On June 30, 2021, the Defendants received nearly 200,000,000 shares of common stock representing 41.75% of total outstanding stock in the Company, which was directly held by Amarillo LP. (Id. ¶¶ 20-21.) The portfolio and investment decisions for the stock were made by

"an investment committee of investment managers which included officers and directors of Certares Opportunities and Knighthead, two of which were also appointed to the Hertz Board of Directors[.]" (Id. ¶ 22.)

On November 8, 2021, Amarillo LP entered into an Underwriting Agreement whereby it sold 15,217,635 shares of Common Stock in the Company at a price of $27.695 per share. (Id. ¶¶ 28-29.) On November 29, 2021, the Company authorized a stock buyback of $2 billion of the Company's outstanding stock. (Id. ¶ 30.) The associated press release did not indicate that the Defendants' directors recused themselves from that decision. (Id.) Between January and May 2022, the Company executed stock buybacks in the following amounts:

| Repurchase Date | # of Shares Repurchased | Average Repurchase Price Per Share |
|---|---|---|
| January 2022 | 12,238,858 | $21.65 |
| February 2022 | 12,271,099 | $19.59 |
| March 2022 | 10,455,008 | $20.71 |
| April 2022 | 4,527,052 | $22.26 |
| May 2022 | 21,877,455 | $19.14 |

(Id. ¶ 31 (the "Hertz Repurchases").) Plaintiff asserts that matching the Defendants' sales with the Company's repurchases alleged shows that Defendants "realized short-swing profits of at least $126,974,412 that are disgorgeable to the Company." (Id. ¶ 34.)

On May 2, 2023, Plaintiff's counsel sent a letter to the Company demanding that Hertz investigate a potential Section 16(b) claim against Defendants, but the Company declined to take any further action. (Id. ¶ 46.) On January 31, 2024, Plaintiff initiated this derivative action. (Compl.)

DISCUSSION

Standard of Review

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662 (2009). In deciding a Rule 12(b)(6) motion to dismiss, the Court must "draw all reasonable inferences in [plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (citation omitted).

Section 16(b)

Plaintiff asserts two claims arising under Section 16(b) of the Securities Exchange Act, 15 U.S.C. section 78p (the "short swing profit rule"), for disgorgement of short swing profits accrued by (1) all Defendants or, in the alternative, (2) only Defendant Amarillo LP. (See Compl. ¶¶ 37-45.) Section 78p(b) provides that:

> For the purpose of preventing the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months, . . . shall inure to and be recoverable by the issuer, irrespective of any intention on the part of

>such beneficial owner, director, or officer in entering into such transaction . . . .

15 U.S.C. § 78p(b) (Westlaw through P.L. 119-4).  To state a claim under Section 16(b), Plaintiff must plausibly allege: (1) a purchase and (2) a corresponding sale of securities (3) by a statutory insider (4) within a six-month period.  See Olagues v. Icahn, 866 F.3d 70, 72 (2d Cir. 2017).  The purchase and sale must be "matched," meaning that the same insider must make both the alleged purchase and the alleged sale.  Feder v. Frost, 220 F.3d 29, 31 (2d Cir. 2000); see also Rosenberg v. XM Ventures, 274 F.3d 137, 142 (3d Cir. 2001) ("[L]iability will attach under Section 16(b) [only] when an individual having beneficial ownership of more than 10 percent of any one class of the issuer's equity securities both purchases and sells shares of the issuer within six months.").

Plaintiff plausibly alleges that Amarillo was a principal stockholder of the Company and thus an insider under 15 U.S.C. section 78p(b). (Compl. ¶ 20.)  Plaintiff further alleges that Amarillo directly sold Hertz stock on November 8, 2021 (id. ¶ 28), and that Hertz repurchased its own stock between January and May 2022, within six months of Amarillo's sale (id. ¶¶ 30-31).  Thus, for the purposes of determining liability under Section 16(b), Plaintiff attempts to attribute Hertz's buyback of its own stock to Amarillo LP (and associated Defendants), as a principal shareholder.  (Docket entry no. 25 ("Pl. Mem.") at 1.)  Plaintiff asserts that, because Amarillo LP held approximately 40% of the Company's common stock during the relevant time period, it must be considered a "beneficial owner" of Hertz stock with an indirect pecuniary interest in the Hertz Repurchases.[1]  (Id. at 1-2.)  Defendants dispute that a

---

[1] "For purposes of short swing transactions, the SEC defines a beneficial owner as 'any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities.'" Roth v. Drahi, No. 23-CV-5522, 2024 WL 4198517, at *2 (E.D.N.Y. Sept. 16, 2024) (quoting 17 C.F.R. § 240.16a-1(a)(2)).  This rule is subject to certain limitations and exemptions, including a safe harbor that exempts a shareholder from

company's transactions in its own securities may be attributed to company insiders under Section 16(b).

Plaintiff has filed numerous Section 16(b) claims in courts around the country premised on this legal theory, and, thus far, each court has rejected Plaintiff's attempt to expand liability to issuer transactions under Section 16(b).  See Roth v. LAL Fam. Corp., No. 23-CV-9265-JPC, 2024 WL 4149241 (S.D.N.Y. Sept. 10, 2024); Drahi, 2024 WL 4198517; Roth v. Russell, No. 23-CV-722, 2023 WL 6845502 (M.D. Fl. Oct. 17, 2023).  For the following reasons, this Court joins in rejecting Plaintiff's reading of Section 16(b).

First, a plain reading of the statute's text undermines Plaintiff's proposed interpretation.  Section 16(b) explicitly uses different terms to refer to "beneficial owners" (such as Amarillo LP) and "the issuer" (Hertz).  See 15 U.S.C. § 78p(b) (mandating the disgorgement of profits inured to a "beneficial owner, director, or officer by reason of his relationship to the issuer" (emphasis added)) (Westlaw through P.L. 119-4).  "We generally seek to respect Congress' decision to use different terms to describe different categories of people or things." Mohamad v. Palestinian Auth., 566 U.S. 449, 456 (2012); see also United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) ("We must presume that Congress said what it meant and meant what it said.").  "It would make no sense to treat the issuer and the insider as functionally identical for purposes of identifying matching pairs of purchases and sales, and thereby to characterize the issuer's share repurchase as the insider having unfairly traded on nonpublic

---

being deemed to have a pecuniary interest in the Company's securities where the shareholder is (1) not a controlling shareholder and (2) does not have or share investment control over the entity.  17 C.F.R. § 240.16a-1(a)(2)(iii).  Defendants argue in the alternative that, even if issuer buybacks qualify under Section 16(b), they are entitled to the safe harbor exemption.  (Docket entry no. 19 ("Def. Mem.") at 14-17.)  As explained below, the Court need not reach this question.

information that it acquired by virtue of its relationship to itself." LAL Fam. Corp., 2024 WL 4149241, at *6 (internal citation omitted).  Therefore, the most faithful reading of the plain text and stated purpose of the statute requires the Court to distinguish transactions by statutory insiders from those of the issuer itself.

Next, as Judge Cronan thoroughly explained in Roth v. LAL Family Corporation, the structure of Section 16(b) cautions against an overly broad application of liability.  2024 WL 4149241, at *6 (collecting cases).  Section 16(b) operates as a "blunt instrument" imposing "liability without fault . . . within its narrowly drawn limits." Feder, 220 F.3d at 32 (citing Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 424 n.4 (1972)); Magma Power Co. v. Dow Chem. Co., 136 F.3d 136, 321 (2d Cir. 1998).  The Supreme Court has clarified that "[i]t is inappropriate to reach the harsh result of imposing § 16(b)'s liability without fault on the basis of unclear language." Foremost-McKesson, Inc. v. Provident Sec. Co., 423 U.S. 232, 252 (1976). The statute must therefore be applied "narrowly" to "limited areas of clear and unambiguous liability."  Lewis v. Varnes, 505 F.2d 785, 788 (2d Cir. 1974).  Roth's interpretation plainly does not meet that standard.

Furthermore, Roth's proffered interpretation would produce undesirable and absurd results.  "Under Roth's theory, then, every time a company that issues an equity security conducts a sale or purchase in that security, every insider in that company is deemed to conduct the transaction himself under 15 U.S.C. § 78p(b)." Russell, 2023 WL 6845502 at *4.  This outcome would interfere not only with the insiders' ability to make investment decisions – for fear that six months thereafter the issuer may implement a buyback opening them to liability – but may also interfere with companies' abilities to transact in their own securities without objection from directors and officers subject to broad liability.  See Kane ex rel. U.S. v.

Healthfirst, Inc., 120 F. Supp. 3d 370, 388 (S.D.N.Y. 2015) ("[I]n the process of statutory interpretation, 'absurd results are to be avoided . . .'" (citing Nat. Res. Def. Council, Inc. v. Muszynski, 268 F.3d 91, 92 (2d Cir. 2001))).

Finally, each court that has considered Roth's legal theory has found that the SEC's "regulatory framework and practices, and key policy considerations preclude attribution of issuer share repurchases to insiders." Drahi, 2024 WL 4198517, at *3; see also LAL Fam. Corp., 2024 WL 4149241, at *7 ("The history of the SEC's rules further suggests that insiders do not have a cognizable interest in repurchased shares under the agency's regulatory framework."); Russell, 2023 WL 6845502, at *5 (reasoning that the SEC's failure to include § 78p(b) in its 2023 report regarding amendments to the disclosure requirements related to issuer repurchase programs "suggests that the SEC does not endorse Roth's theory"). Indeed, the legislative history of Section 16(b) demonstrates that Plaintiff's reading conflicts with the purpose and meaning of the statute. As Defendants correctly argue, until 1991 the regulatory language of Rule 16a-4(c) explicitly exempted issuer repurchases from the short swing profit rule. (Def. Mem. at 10 (citing 17 C.F.R. § 240-16a-4 (1990) ("Securities reacquired by or for the account of an issuer and held by it for its account shall be exempt from sections 16(a) and (b) during the time they are held by the issuer.")).)  In 1981, the SEC interpretative release construing the provision explained that the "[i]mposition of the short-swing profit recovery provisions of Section 16(b) would be incongruous [in relation to issuer buybacks,] since the company would owe any profit to itself." SEC Release No. 34-18114, S.E.C. Docket 856, at n.59 (Sept. 24, 1981). While this provision was removed in the 1991 regulatory amendment, SEC releases again explained, "[s]ince the issuer is not subject to section 16, [the express exemption of securities reacquired by the issuer] is unnecessary." Exchange Act Release No. 34-28869, 56 Fed. Reg.

7242, 7261 (Feb. 21, 1991).[2] The prevailing agreement that the amendment to Rule 16a-4(c) has no effect on existing law again supports the conclusion that Section 16(b) cannot reach issuer repurchases.

For the foregoing reasons, this Court declines to find an issuer's transactions in its own securities to be attributable to an insider for the purposes of Section 16(b). Defendants' motion to dismiss the Complaint is therefore granted in its entirety.

### LEAVE TO AMEND

"'Leave to amend, though liberally granted, may properly be denied' for 'repeated failure to cure deficiencies by amendments previously allowed' or 'futility of amendment,' among other reasons." Bischoff v. Albertsons Co., No. 22-CV-4961-CS, 2023 WL 4187494, at *7 (S.D.N.Y. June 26, 2023) (quoting Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008)). Because the deficiencies in Plaintiff's claims arise from Plaintiff's core legal theory, the Court declines to grant Roth an opportunity to amend. See LAL Fam. Corp., 2024 WL 4149241, at *11 (dismissing with prejudice Plaintiff's Section 16(b) claims due to the futility of any amendment).

---

[2] "While SEC guidance documents are not binding, they are 'persuasive, particularly in light of the absence of any contrary precedent . . .' when interpreting the meaning of the Securities Act and SEC regulations promulgated thereunder." Tang Cap. Partners, LP. v. BRC Inc., 661 F. Supp. 3d 48, 68 (S.D.N.Y. 2023) (internal citations omitted).

CONCLUSION

This Memorandum Order resolves docket entry no. 18. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

SO ORDERED.

Dated: New York, New York
March 31, 2025

                              /s/ Laura Taylor Swain
                              LAURA TAYLOR SWAIN
                              Chief United States District Judge